So we will dispense with the calling of the calendar, and we'll proceed to the first case, M.E.S. v. Safeco. Good morning, Your Honors. Michael Confuciano for the appellant. There's really – you know, I would break the case – One second. Okay, go ahead. I'm sorry, Judge. I would break the case really into two parts. Could you, even before you get into the argument, just tell us about – we understand there's another case, a companion appeal, that hasn't been briefed yet. Could you just tell us what are the differences, what the status is? Sure. Can we go ahead with this case without worrying about the other one? So this case, there's really – arises out of the same litigation, but this case that's before the Court today is about my client M.E.S.'s claims against Safeco, primarily for breach of implied covenant of faith and fair dealing and tortious interference with contract. The 09 case is Safeco's own affirmative claim for indemnity under the indemnity agreements. Okay. Well, they're companion cases, right? They're two sides of the same coin. Correct. The only reason this case came first, Your Honor, is because the district court entered a final order in this case because M.E.S.'s claims in this complaint were dismissed with prejudice, and that triggered the right to appeal, and we had to appeal it. Is this a case where the same panel ought to be hearing both appeals? I think, yeah. I think the same panel should hear both appeals, yes. No one made an application to consolidate the appeals? Well, what happened – In tandem? Yeah, what happened, Your Honor, was this – there was an evidentiary hearing that was held in the 09 case below, which took quite a long time, and by the time that case was actually done and we were able to file the notice of appeal, it was only – it might have been about two or three months ago. I did file – actually, opposing counsel and I talked a little bit on the phone about whether or not the cases could be consolidated, but we never came to any kind of a – we actually didn't speak again after that. So I did file a motion in the 09 case. I didn't ask for consolidation of the cases because I knew this oral argument was already on the calendar, and I didn't want to inconvenience the court in that way. Will the other case be fully briefed? I think it should be – my brief is due at the end of January, so I would expect the case to be fully briefed maybe by March or April, something like that, maybe May. If they have a full 90 days, it could be – maybe something like May. If it's not fully briefed until May, it might not be argued until next fall, the other appeal. Right. Okay. One final sort of semi-procedural question. Has any of the players here filed chapter? No. As far as I know, no. Okay. I thought I'd seen something I could. Yeah. Thank you, Your Honor. But no, the answer is no. So in any event, I hope I didn't – go ahead, Judge. I'm sorry. Yeah, we'll restart your clock. Okay. No problem. And, again, I hope – it's an unusual case because of the fact that there really are two sides of the same coin, as Your Honor said, and it was just the way the case was postured essentially in the district court. If the district court judge didn't enter the final order, which kind of surprised us at least, we wouldn't have had to file a notice of appeal yet. They probably would have been ordered together. But, unfortunately, that didn't happen. But in one sense, it kind of makes this case a little easier to decide because it's really strictly on a summary judgment record and it's strictly on whether or not my client had any affirmative claims against Safeco that should have, you know, proceeded to a jury trial. I guess I would look at the analytic puzzle in this way. It's really two parts. If you look at what the district court judge said and what Safeco argued below, you know, they really said, well, all the actions that we, Safeco, took were all – basically we were empowered to take by the indemnity agreements in question. There was two indemnity agreements that covered the three construction projects. That's really the first analytical question I think before the court is whether or not Safeco was insulated essentially by the indemnity agreements or empowered to take these acts. Safeco makes a number of arguments in that regard, but, you know, and I want to just go through them. I mean, the Army Corps issued cure notices raising problems. Right. I mean, what was – but yet it's your position that it was wrong for Safeco to inject itself in the process even though there was a possibility it would be on the hook? That's correct, Your Honor, and this is important. So the notice to cure, that's still when it's between two contracting parties, my client and the government. The notice to cure is actually directed to my client. The surety is cc'd on the notice to cure, but it's not a notice to the surety, and the surety at that point has no right under the indemnity agreement. Well, but that's misleading because you know and I know that if there were a default, the surety would have to in all probability write a large check and then take off from there. And what was happening – and in addition, the surety had under the bond a number of options. It could step in and complete itself, could get someone else to complete and so forth and so on. So you're saying that the surety had to sort of sit on its hands without exploring its options until when? Until there was a declaration of default and – That made it for – what was it under the contract that compelled that result? That said – That said we can't start to look at our options to figure out how we're going to get out of this mess until there's a formal declaration of default. It doesn't make a lot of sense to me. But, see, the problem with Your Honor's analysis, which I appreciate, but this is what the district court said. The issue, the first issue is, does this agreement, this indemnity agreement, empower them to take these actions? Because the district court said everything Safeco did, whether it was before default was declared or after. So if it doesn't empower them, how does it prohibit them? That's a different question. Well, but that's what you're saying. They were prohibited from going to the meeting, right? I'm saying they were prohibited from going to the meeting on the grounds of New York common law, which is tortious interference with contract of breach of the implied covenant. They were going to be on the hook for a check. They weren't a stranger to this transaction. But here's the – That's the heart of tortious interference claims. But the tortious interference claim, this is – you're really, Your Honor, with all due respect, you're kind of mixing apples and oranges. We sometimes do. The district court judge said, hey, everything Safeco did was insulated by this, and unless you can prove fraud and collusion, you can't – they're not liable. That's wrong. And the reason why it's wrong is because this doesn't give Safeco any rights to take any action in this contract until there's a declaration of default. That's important. You said a moment ago that New York common law prohibited Safeco from going to the meeting. What in New York common law says that? Well, our argument is that under breach of implied covenant of good faith and fair dealing and tortious interference with contract, Safeco's – Just by going to the meeting, it's acting in bad faith? No. How is it acting in bad faith? It's a cumulative effect, Your Honor. You know, by going to the meetings and telling the contracting officer, in closed doors, I might add, we're going to take over the agreement when there was no declaration of default. That essentially prevented MES, my client, from pursuing any of the claims and defenses it had against the government. It's very important to separate out those two things. Wasn't it in their interest, the interest of Safeco for your client to complete the contract rather than to breach the contract? I mean, to be frank, I don't know what – I don't know if Safeco made a mistake. I don't know what was in their mind. But the fact is, my first position is this. The district court judge's – district court judge's analysis was wrong, because this doesn't give them a insulation. If they took any actions, it was either wrongful or not under governing New York law. What action do you claim they took that was wrongful, that was tortious? Well, with respect to the first agreement, the pyro, they went to the notice-to-cure meeting over my client's objection, and they talked behind closed doors with the government contracting officer and said, don't worry, we'll take over the claim. That's wrongful. And the reason why it's wrongful is because at that point in time, Your Honor, they were in a party to the contract, and they had no right to interfere in the agreement. But, Your Honor, that's their problem. Then they should have structured their indemnity agreement in a different manner. Look, here's the bottom line. Help me alleviate a concern I have here. It seems to me that what's going on here is you have a liability under an indemnification agreement to Safeco. They stepped in and paid money for you, and you're using this forum, which you're maybe entitled to do, to stretch out the repayment as long as you can, alleging I won't say frivolous claims, but I would say claims that we have to scratch our heads about. With all due respect, Your Honor, I don't think that's the case at all. And this is important. Have you ever seen a wrongful interference claim succeed on anything like these facts? Liberty Mutual itself, Safeco's parent, acknowledges the same principle. And I pointed this out in my brief. Liberty Mutual says we can't come into a contract before a declaration of default is declared because we could be subject to tortious liability with contract. That's the first issue, Your Honor, before the Court. This Court can't say that under this indemnity agreement, Safeco had a right to come in and talk to the contracting party of the other side. They can't do it. But you're a distinguished member of the Bar, so I would not use words like frivolous about your claim. And I don't think it is. I think my argument is legally correct. Whether or not the facts that a jury can find amount to good faith or fair dealing, breach of that covenant under New York law, or tortious interference is a separate issue. But when you look at what the dis- But what are the facts that support conclusion of bad faith on the part of Safeco? Well, I laid them out, you know, really in detail in my brief, but Tell me what they are right now. Summarize them for us. Well, generally they are That's fact number one. Wow. Attending the Notice to Cure meetings over my client's objections, meeting with the government contracting officers without my client's participation. With respect to the joint venture project, they did more. They assured Safeco, hey, you can rely on our lawyers with regards to talking to the client, which turned out that that was not done in good faith, we say. And they also presented this memorandum of understanding they were going to enter into to avoid the declaration of default. And then they withdrew it at the last minute, which, of course, caused the government to issue it. Here's what distinguishes my case. Look at the certified claim letters that Safeco wrote. I couldn't make my argument hold any water if the certified claim letter had nothing in it. The certified claim letters that Safeco wrote show what my client, MES, could have actually said had Safeco not interfered in the contractual relationship. If you completed the contract, we wouldn't be there, right? We wouldn't be. But the reason why we didn't complete the contract is because Safeco came in and stepped into our shoes under the indemnity agreement. What we're saying, Your Honor, is they did it prematurely. It was after the default, right? No. The whole point of it is the actions they took before the default are what precipitated the declaration of default in the first place. Your Honor, look at the certified claim letters, which we talk about in the brief. Those letters detail all the defenses that MES had to what the government did. The government violated the Anti-Deficiency Act. The government wasn't granting equitable adjustments under the contracts. All of those defenses MES could have asserted and should have been able to assert. And it would have asserted them if Safeco didn't come in months in the joint venture case, months before there was a declaration of default. They were told, don't come into this contractual relationship. You're not a party. So with all due respect, Your Honor, these are not frivolous arguments. I didn't say they were. I avoided saying they were frivolous. These are actually very important issues that the Court should just make a definitive statement on. Look, Safeco's position is this, essentially. Once we sign the indemnity agreement, then we have an interest in the project. So you mean that the week after they sign the agreement, could they come in and start talking to the government contracting officer? No, is the answer. So there's obviously a limit to when they can come in. But you concede that the project was experiencing significant difficulties at the time they went to the meeting? It was experiencing difficulties. But we say the difficulties were from the government. What was the most significant difficulty in your view at that point? Well, with respect to the joint venture, that one was actually almost done. That was 93 percent done. So honestly, we don't really – all the difficulties were from the government. They didn't have the funding necessary that Federal law requires they have for the project. And because they didn't have the funding, they started to say, oh, you're causing problems under the contracts. It really wasn't MES's fault. But you weren't going to do work if you weren't getting paid, right? Actually, my client did do a lot of work for which they didn't actually get paid. Safeco took the money after they stepped into our shoes. So, I mean, look, here's what's important, Judge. If you – if the certified letters that Safeco wrote in this case – and I understand my time is up – if there was no meat on the bones, in other words, Judge, if my client just walked away from the project, we could have the same argument. I could say, hey, Safeco came in prematurely. They shouldn't have stuck their nose in their business. But if I had no argument as the contractor, MES, then it would be like, well, what's the difference? You would have defaulted anyway, and timing doesn't make a difference. What damages would possibly have been caused? This is not that case. You have some time for rebuttal. Yeah. Thank you for hearing the case, Your Honors. You're not going to read all of that to us, are you? Yeah. Last night, my son was asking me how much more do I have to read. Good morning, Your Honors, and thank you. I'm going to go ahead and just address some of the comments you all made, and then I can go back and discuss where our position is. As the Court is well aware, this case has been going on for nine years. And after six years of in-depth discovery, not a scintilla of evidence can the appellant assert such to rise to the level that somehow Safeco acted in bad faith. In fact, what the record shows is they chose not to even depose people that were at the scene, instead wanting to rest on its own concocted version of the truth, which is improper and certainly not a basis. So why did Safeco go to the meeting? Safeco went to the meeting because, pursuant to the Federal Acquisition Regulations 49.402-3, the government is required to advise the surety when there is an imminent default, a termination. That's the other thing. Everyone's kind of conflating the words default and termination. When the government issues a cure notice, they are asserting that the contractor is in default of its obligations under the contract. And that's what happened here. They issue a cure notice saying they're not meeting, they're delayed in completing the projects, there's deficiencies, we're considering termination of a contractor. And so under the FARs, they're required to provide notice to the surety, and they, in their cure notice, demanded the surety's attendance. And there is absolutely nothing in the indemnity agreement. The cure notice asked for or demanded for Safeco to attend?  Rita, just the language from one of them. Additionally, MES is directed to attend a meeting scheduled for January 29th regarding this cure notice. Your presence, as well as the presence of your bonding company, is required. And what page is that? A4045. Thank you. And it's the same language, Your Honors. A4110, your bonding company is required to attend. And A4076, your bonding company is also required to attend this meeting. So that's the context by which, and that's very typical and routine, exactly for what Your Honor, I think, pointed out, that the surety is a tripartite agreement. We've issued bonds to the obligee, and those are, we are acting pursuant to our obligation. What appellate would be ---- So after receipt of that letter, they told you not to come to the meeting? Not on the HEPFF project. We have their notes in which they told us to come. They contend that they told us not to come on the PIRO project. On the HEPFF project, Your Honors, we have their handwritten notes at A2330, MES does agree to Safeco's presence at the meeting with the Corps. And, in fact, on the HEPFF project, they're arguing that, oh, they were duped to attend the Cure meeting with Safeco's counsel, and they had that whole other litigation on Safeco's counsel was representing them at the Cure meeting. So they talk out of both sides of their mouths. None of it is accurate, Your Honor. And the most important point, however, Your Honor, is they're conflating the bonding company's obligation to the United States government under a tripartite agreement versus rights and obligations under the indemnity agreement. Two different things. There exists absolutely no rights, no benefits are conferred to MES under the indemnity agreement such that they have an independent and affirmative claim. And the indemnity agreements are issued to the benefit of Safeco, and thus their claim is defective as a matter of law. MES can point to no express provision or obligation which Safeco has breached, and that's because the indemnity agreement doesn't provide them with anything. The indemnity agreement, because Safeco acts and issues the bonds, that's obviously the exchange for the indemnity agreement and the consideration. The rights then all go to Safeco. And the rights to Safeco are to be indemnified, and then they have the right to be reimbursed for any claims discharged of all their obligations. And then they have the exclusive right for itself and the indemnitors to determine whether any claim shall on the basis of belief, liability, expediency, or otherwise be paid, compromised, defended, or appealed. Can you briefly tell us what was discussed at these meetings? Your Honor, at the cure meetings, what the evidence shows is that at the cure meetings they discussed options for completion of the project. That's it. There's no other discussions at the meeting. There's zero evidence of anything Safeco said or did. In fact, what MES would have Safeco do is repudiate its bond. It's their contention, and we deposed MES. They said that Safeco said we will honor our obligations under the bond. Well, they already had, the government already had the bond. Safeco already agreed by issuing the bond in the first place that they would complete the project if there's a default under the termination or provide the funds for it. That's what the bond provides. So in essence, what the appellant is saying is that Safeco didn't repudiate its bond to the government, which certainly is not a position which they can assert bad faith on the part of the surety. They have no evidence, nothing whatsoever, no act that Safeco did that could rise to any level of bad faith whatsoever. And with regard to the indemnity agreement. You're saying that you will fulfill your obligation under a contract is not interference with a contract. Right. It's a bond. It's issued. It's a tripartite agreement. There's, you know, we make representations to the government that we will, by giving them the bond, they look to us to complete the project. And we have to say that. They're trying, MES is trying to create a brand-new cause of action for which there is no case law, in which an indemnitor somehow can turn surety law on its head and have an affirmative claim such that the surety would somehow have to pay the principal for its losses as a result of the bonded contracts. Those agreements don't exist at all, Your Honors. And, in fact, the expectation under the indemnity agreement is all, the essential objective of the agreement is to ensure that Safeco gets indemnified. And the plainly, that's what was bargained for by the parties. That's the intentions as expressed in the indemnity agreement. And there can be no implied duty that creates an independent right or obligation beyond those intentions that are plainly stated in the bond. Did you ask for costs or sanctions on this appeal? We did ask for sanctions with regard to the contempt of MES. There was separate— What about for this appeal? For this appeal, we've asked for costs. Thank you, Your Honor. And— What are your thoughts on the other appeal, whether we should go ahead and decide this appeal, whether we should wait, whether—what are your thoughts, if any? I think, Your Honor, that this appeal stands easily on its own because there's no affirmative claim. That's what they're trying to assert. New York law does not recognize an affirmative claim for bad faith. So, instead, they've cloaked it as a contract breach under the indemnity agreement, for breach of the indemnity agreement and the breach of the implied duty of good faith and fair dealing. I think it's easily dispensed with and doesn't need to await the other appeal. And then also, given the timing, et cetera, Your Honor. The other point I wanted to make is there's absolutely no evidence that SAFCO in any way caused the terminations, an independent and intervening act, or that any conduct was actually or approximately caused. In that regard, they have their own testimony in which the Haranis and Mr. Cadre testified that it was due to deficiencies in performance, delays, the cure notices themselves. Again, they—MES provided no evidence whatsoever. Again, they took no depositions of anyone who was involved in any of these actions. And that's been the consistent theme. They just want to create a story. They really don't want to know the facts. No discovery whatsoever with the court other than document production. What is going on here? I read this record and I looked at the quite—I mean, you know, we have cases pending in our court for considerable periods of time, but this is on the outstretch, on the outliers of that. And I, you know, I read the briefs. I spent time with the records. Your Honor, since— There's something I must be missing here. Well, you're not. Unfortunately, since 2008, the testimony below is that MES and Mr. McCool ceased doing any business and essentially just litigates claims. That's what's been going on for 10 years. He attests we received a contempt order. They failed from the very beginning to provide collateral, the interim remedies. That had to go to the Second Circuit as well, Your Honors. And then the court found them in contempt. To this day, they haven't provided $1 to Safeco. They didn't provide it under the indemnity agreement. So it's, as you all accurately said, it's delay, delay. Somehow there's still, you know, I don't want to get into the details of fancy cars and meals and everything else, yet they claim they have no money and there's no insolvency proceedings, and in the meantime, it's just a delay, delay process so they never have to pay us a dime. And that's how it's been from the day one. The court has found them in contempt. They also transferred funds to other LLCs. Should we do anything about that? I would love the court to do. I find it a travesty that we've had to endure nine years of litigation and spend all of this, all these funds in the, and the resources of the court over a litigation that was clear-cut from the beginning. The fact that Safeco spent $15 million. I'm asking you what we should do about it, if anything. Your Honor, I would say that I believe MES has the resources to pay on the judgment and that MES should pay the judgment or. Well, the second case, you're right, Your Honor, as far as the costs. On this case, they should be sanctioned. They should be sanctioned for asserting claims lacking any foundation and any fact whatsoever. You asked us to do that. Pardon? You asked us to do that. Have you made any such motion? I believe the brief does not, Your Honor. Thank you, Your Honors. We'll hear from your colleagues. Good morning, Your Honors. Jonathan Bondi for Liberty Mutual. I have one minute, but I will try to keep it even less than that. You already now have 50 seconds. All right. If you don't have any specific questions about the one point that addresses liberty, which is the dismissal of MES's claims against liberty under the bonds that Liberty issued for Communal. I think dismissal was proper. These are newly made-up, hope-to-avoid summary judgment facts. I think we addressed them in our brief. One point that I apologize for not really being in our brief is that a notice was supposed to be in writing, and the only newly created fact thrown against the wall by MES in an effort to stave off summary judgment was, I told people they were in default. But any of the written correspondence, and we outlined it chronologically in our papers, shows that there is nothing that mentions the word default until after the lawsuit had been filed, well after the time had passed by which Liberty could have undertaken any manner of performance under its bonds. If there are no questions, I'll just rely on our papers for the rest and cede my time to my colleague. Thank you. Thank you, Your Honors. I have an essay comment now. I think the arguments heard from the appellant are more noteworthy for what they didn't say than for what they did say. Not once did I hear a mention of my client during oral argument. I think that's significant. I think that rings loud. It's because essay comment now, as we've presented in our papers, should not have been interjected into this. It's an interesting, maybe you won't have to pay for this time, but it's an interesting name. Can you tell me something about what kind of ---- It's a family name, Your Honor. My clients are the Communal family. I see. And they started the business and they ended up selling it to MCOR, which is the parent company. So it's a family that started the business. Thank you. You're welcome. I don't really have much more to say other than we should not have been interjected into this lawsuit. Any defenses that we could have asserted would have been asserted by Safeco. And so it's unnecessary. Your Honor is talking about should anything be done. I have five seconds. And should there be sanctions that are imposed here? I think my client has spent a lot of time and resources, for me and my firm, to present a defense that in a case they shouldn't have even been involved in. As counsel said, for Liberty Mutual there's no evidence of a breach of contract. Other than conclusory allegations, and if there were any allegations that were of any substance and there weren't, they came in a self-serving affidavit after we filed our motion for summary judgment. Unless Your Honors have any other questions, that's all I have to contribute. Thank you. Thank you. And we'll hear the rebuttal. I think it's important to just look at, again, it's two parts to the analysis. I'm an appeal lawyer. I wasn't involved in the district court below. But I look at the way the district judge analyzed the case. And, again, I go back to it. You know, Safeco is talking about we ---- I'm even more confused than I was at the beginning of this case. Tell me again what the basis for your contention that it was wrongful for Safeco to be at this meeting. Because we think that at that point in time they didn't have any rights to be at the meeting. She just ---- It's not right. She pointed you to a code of federal regulations and a letter. Right. And, Your Honor, here's what ---- Don't interrupt me. Go ahead, Judge. I'm sorry. Your Honor, she pointed to a code of federal regulation and she pointed to a letter that you received from the company directing them to appear at the meeting. How is that wrongful? Because that's not what the record says. The code of federal regulations, Your Honor, first of all, doesn't bestow any rights on Safeco, I was assured. It gives the government contracting officer options in lieu of terminating a contract. The Army Corps directed your client to have them there. That doesn't make a difference. How is it bad faith for them to be there under those circumstances? Because at that point in time ---- You're still arguing that it was bad faith for them to be there, even though the Army Corps, which held the contract, directed your client to have them here, there.  That's right.  And this is the reason. So explain to me why that's not a frivolous argument. It's not a frivolous argument for two reasons. One is the district court judge looked at the indemnity agreement and said, well, the indemnity agreement empowered them to take these actions. It doesn't. Under the plain language of the agreement, as we've argued, it hinges on ---- Go ahead, Judge. In light of what Judge Chin just said? Yes. In light of the question he asked. Well, can you repeat it, Your Honor? Never mind. Why don't you finish up? Why don't you finish up? Finish up. It's wrongful because you have to look at the point in time in which Safeco took the actions. We focus in the appeal on its pre-default actions, not actions that occurred after the Corps declared default. We're not arguing about those. All right. We have your argument. Thank you. Thanks for your indecision. We'll hear the next case.